UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
UNITED STATES OF AMERICA,

                                                                            1:22-cr-00192-JSR-7

      -against-


Edwin Jimenez,
                    Defendant.
------------------------------------------------------X


## MEMORANDUM IN AID OF SENTENCING
## ON BEHALF OF EDWIN JIMENEZ


**Attorneys for Edwin Jimenez**

CONOR McNAMARA, ESQ.
LAW OFFICES OF ROBERT TSIGLER
Phone: (718) 878-3781
Direct: (718) 701-4114
Fax:    (212) 748-1606
cm@tsiglerlaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
UNITED STATES OF AMERICA,

                                                             1:22-cr-00192-JSR-7

      -against-

Edwin Jimenez,
                Defendant.
------------------------------------------------------X

# MEMORANDUM IN AID OF SENTENCING
# ON BEHALF OF EDWIN JIMENEZ

**I.    PRELIMINARY STATEMENT**

Defendant Edwin Jimenez respectfully submits this memorandum in aid of his sentencing, scheduled for February 15, 2023. On November 2, 2022, pursuant to a written plea agreement, the defendant allocuted to his criminal conduct as charged in Count 14 of 22-CR-192 (JSR) [the lesser included offense Conspiracy to Distribute and Possession with Intent to Distribute Cocaine in violation of 21 U.S.C. 841(b)(1)(B)].

Mr. Jimenez is genuinely remorseful for his behavior, which was neither vast nor sophisticated. In his written statement to the Court, he "embraces" and "[confronts] … some unpleasant facts," including his shame and embarrassment for "having left his family behind" as a result of his criminal conduct and drug addiction. *See, Exhibit* A-1, Statement of Edwin Jimenez.

2

Additionally, a multitude of letters received from neighbors, friends and family speak to Mr. Jimenez' inherent qualities as a person, worthy of this courts's attention and consideration. The letters are attached, collectively, as *Exhibit A*, 2-12.  None of the writers excuse his behavior for the crime of conviction.  Rather, they speak to his redeeming attributes and recognize him as a dedicated friend, involved parent and grandparent and most importantly, an unconditional caregiver to his partner, Jennifer Perez, who suffers from multiple sclerosis ("MS").  <u>See</u>, *Exhibit B*, <u>J. Perez Disability Record</u>.  Both before and following her diagnosis in 2018, Mr. Jimenez has served as her caregiver, providing both physical and emotional support throughout her ordeal. Although never married, they share a relationship spanning more than 30 years and consider themselves in all respect, husband and wife.  Collectively, the information provided suggests an optimism for Mr. Jimenez' capacity for rehabilitation and change.

For the reasons set forth below, it is respectfully submitted that the Court impose a non-Guidelines sentence, which, in our respectful view, is "sufficient, but not greater than necessary" to achieve the sentencing purposes of 18 U.S.C. § 3553(a).  Taking into account Mr. Jimenez' age (50), prior drug use, non-violent criminal history, the circumstances of his participation in the offense conduct in this case and his full acceptance of responsibility and unqualified remorse, a non-Guidelines sentence and period of supervision along with vocational training and drug counseling would be appropriate at this point in time for this defendant.

Such a sentence would enable him to return to his role as caretaker for his ill partner. 18 U.S.C. § 3563(a)(2); 18 U.S.C. § 3563(b)(1), (4), (19).  As he readily admitted during his Presentence Interview ("PSI"), Jimenez acknowledged that "[h]e has made mistakes in the past and wants to "get back to [his] family," and "get this behind [him]."  <u>Presentence Investigation</u>

3

Report ("PSR"), ECF No. 123, ¶ 66.

Pursuant to U.S.S.G. § 5B1.1(a)(2), counsel suggests that the Court impose a sentence outside of the stipulated United States Sentencing Guidelines (the "Guidelines") range of 135-168 months, and instead impose a sentence of:

- The statutory mandatory minimum of 5 years years' imprisonment;
- Followed by 4 years supervised release;
- Outpatient substance use testing and treatment; and
- Educational/Vocational programs obtain his diploma and/or pursue a trade or certification program that will aid him in building skills to increase his future employability.

This recommendation calls for a non-Guideline sentence below the current stipulated guidelines range of 135-168 months' imprisonment, which is based upon a total offense level of 33 and a criminal history category of I.

Here, the proposed sentence properly reflects the seriousness of the offense, promotes respect for the law and provides just punishment for the offense to which he pled guilty. See, 18 U.S.C. § 3553(a)(2)(A). In addition, the recommended sentence takes into account Mr. Jimenez' history and characteristics, affords adequate deterrence to criminal conduct by himself and others, and protects the public from further crimes by him. Id. § 3553(a)(1)–(2).

We recognize, as this Court has observed, "it is obvious that sentencing is the most sensitive, and difficult, task that any judge is called upon to undertake." U.S. v. Adelson, 441 F. Supp. 2d 506, 515 (S.D.N.Y. 2006), aff'd, 301 F. App'x 93 (2d Cir. 2008). As in Adelson, we would offer that this case warrants a "greater reliance on the more general considerations set forth in § 3553(a), as carefully applied to the particular circumstances of the case and of the human being who will bear the consequences." Id.

As discussed in detail below, when the Court considers all of the facts relevant to his sentencing, including an examination of the § 3553 factors, Mr. Jimenez' family and personal history and other information, he respectfully requests that the Court exercise its vast discretion and impose he mandatory minimum statutory sentence, a variance from the recommended guidelines range for this offense of conviction, which is appropriate to meet all of the sentencing goals embodied in 18 U.S.C. § 3553(a).

**Background**

Mr. Jimenez was born on August 19, 1972, in Brooklyn, NY, to the union of Edwin Jimenez, Sr., age 75, a retired chief shop steward; and Luz Jimenez nee Acevedo, age 74, a retired radiological technician. His parents still reside in Brooklyn, NY. Jimenez has a twin sister, Elaine Jimenez, age 50, who is a U.S. Postal Service employee who also resides in Brooklyn, NY.

His parents are deeply saddened "[t]o know that our son was in some state of vulnerability that led him to make a bad decision in his life resulting in his arrest." *Exhibit A-2*, Letter of Character from Parents. They note that in school, Jimenez was admired by teachers "[f]or his respectfulness, his good behavior and kindness and sweet personality." *Id*. They state that during visits with their son, "… we can see how remorseful he is and how eager he is to make things right. Eddie wants to get back to spending quality time with us, his wife, his son and grandson." *Id*. In asking this Court for leniency, they urge "Eddie is now enduring the series of negative outcomes manifesting from his mistake and wishes he go back in time to undo his mistake. While it is impossible for him to do that, we are confident that he is on the right track to making better decisions in the future. He understands how his decisions have affect

5

others in a negative way and he understands and acknowledges that he now must face the repercussions of a bad choice." *Id.*

His twin sister, Elaine Jimenez, confirmed that they both come "… from a respectable wholesome family surrounded by love." *Exhibit A-3*, Letter of Character from Elaine Jimenez. She notes that education was stressed to them by their parents, and the defendant later instilled that in his son, Edwin Jimenez, Jr., who attended Touro College as a result. She recalls that when her daughter was an infant, "Anytime Eddie had an open schedule from work he would alternate to pick her up and take care of her until my husband and I return[ed] home from work. He was and still is a very protective and loving uncle to my daughter and my daughter loves him dearly." *Id.* Having likewise visited her brother since his arrest and detention, Elaine believes "… [E]ddie recognizes the price he must pay for his mistake and wants to move forward on a better path in life[.]" and "… understands the repercussions for bad choices." *Id.*

Friends offer testimonials about how Mr. Jimenez provided moral support to them during, for example, periods of unemployment, helping to "… find small jobs cleaning buildings, helping to paint homes or just helping neighbors to move or assisting [the] elderly with errands such as dog walking. It didn't pay us much, but it significantly made a difference in my life. It was Edwin who was a source of camaraderie for both me and my family. He has truly been a good friend over the years." *Exhibit A-8*, Letter of Character from Dhardhyz Gavilan. The superintendent of defendant's building (and previous employer), remembers Mr. Jimenez as supportive of the many elderly tenants there. *Exhibit A-7*, Letter of Character from Christopher Nunez. One such tenant and neighbor recalls that every Thanksgiving, Mr. Jimenez would "…

help his wife Jen cook and make sure to save me and my family a plate of food." *Exhibit A-9*, Letter of Character from Emely Maggiolo.

The defendants significant other, Jennifer Perez, describes with fondness that Jimenez is a "… "kind" person, who would take the "shirt off his back to help" others." PSR, ECF No. 123, ¶ 98.  In describing their struggles during the last decade, she states that their financial situation became difficult after she started experiencing medical issues years ago, when she began experiencing severe back issues and had to cease working.  She underwent surgery for her back and after her recovery, she returned to work.  However, shortly thereafter, she was unable to walk.  Ms. Perez was then diagnosed with Multiple Sclerosis, and although she has regained some ability to walk, she struggles with her stability.  While she was unable to work, their bills accumulated and this "took a toll on both [Jimenez and Perez]."  *Id.*, ¶ 97.  At present, she has no specific person assisting her.  Ms. Perez confirms that the defendant served as her aide before to his arrest and detention, and "I am trying to do my best until [Jimenez] gets home."  *Id.*  From 2020 until his arrest on March 31, 2022, he worked as his wife's home attendant as funded through government programming.

Based on their personal experiences with, and observations of, Mr. Jimenez, each pleads with this Court to extend Mr. Jimenez leniency when deciding the appropriate sentence for the offense of conviction.  The sentencing recommendation by U.S. Probation Officer Specialist Tandis Farrence also calls for a variance from the guideline provisions, albeit from 136-168 months to 120 months (followed by 5 years' supervised release).  While that recommendation is substantially greater than the sentence we propose here, it appropriately begins to balance the defendant's personal characteristics with his actions in the instant offense.

Mr. Jimenez has accepted responsibility for his actions. By way of explanation—without minimizing his behavior or excusing it—he appears to have sold narcotics during the charged period in part to help support his family financially, as they were struggling to meet their household bills; that due to Ms. Perez's condition she was unable to work, and their bills were accruing, placing them in a difficult financial situation. Another part which contributed to his illegal conduct and for which he was reluctant to admit to himself or family, was his own addiction. *See Exhibit A-1*, at pg. 1. Edwin Jimenez expresses genuine regret for his actions and states that in looking back on the situation now, he should have pursued other employment prospects rather than becoming involved in the offense.

## II. THE COURT SHOULD IMPOSE A NON-GUIDELINES SENTENCE

### A. The Purposes Of Sentencing In This Case Are Satisfied By A Non-Guidelines Sentence

Case law recognizes that 18 U.S.C. § 3553(a) requires a court to impose an individualized sentence that is reasonable, one that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2 of this subsection." *Gall v. United States*, 552 U.S. 38, 49 (2007). *See also United States v. Dorvee*, 616 F.3d 174, 184 (2d Cir. 2010) (assessing the reasonableness of a sentence based on "the district court's individualized application of the statutory sentencing factors[,]" not "the amount by which a sentence deviates from the applicable Guidelines range"). Further, the Sentencing Guidelines have been advisory since the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 245 (2005). Section 3553 (a)(2) states that such purposes are:

> A. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

      B. to afford adequate deterrence to criminal conduct;

      C. to protect the public from further crimes of the defendant; and

      D. to provide the defendant with needed education or vocational training medical care, or other correctional treatment in the most effective manner.

All of these purposes of sentencing can be satisfied in this case by a non-Guidelines sentence as recommended by Probation and even lower as requested by the defense.

### III.   ARGUMENT

#### A.   The Applicable Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. *United States v. Savarese*, No. 12-CR-421 (WFK), 2020 U.S. Dist. LEXIS 221708 (E.D.N.Y. Nov. 25, 2020).

When considered in their entirety, Mr. Jimenez respectfully submits that a sentence below the current guidelines range, is sufficient, but not greater than necessary, to achieve the goals of sentencing. See, 18 U.S.C. § 3553(a).

Consistent with case law in this district, an appropriate sentence should, among other things, reflect the seriousness of the offense, promote respect for the law and provide just punishment for the offense. See, 18 U.S.C. § 3553(a)(2)(A); *United States v. Jamison*, 838 F. App'x 622 (2d Cir. 2021). In addition, an appropriate sentence should take into account the history and characteristics of the defendant, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant. *Id.*; § 3553(a)(1)–(2). In weighing these

factors, "a district court has broad latitude to 'impose either a Guidelines sentence or a non-Guidelines sentence.'" *United States v. Rigas*, 583 F.3d 108, 114 (2d Cir. 2009) (quoting *United States v. Sanchez*, 517 F.3d 651, 660 (2d Cir. 2008)).

Regarding the charged conduct, friends and family members have expressed dismay at what they view as uncharacteristic behavior on his part in the commission of the instant offense. Mr. Jimenez can't adequately explain his illegal conduct other than one of desperation owing to his wife's debilitating illness, loss of employment and mounting financial pressures. Admittedly, these are not excuses for his criminal conduct and he is sorely disappointed in himself for having participated in behavior that would jeopardize his family relationships, the most important of which is his relationship with his wife, parents, twin sibling, children and grandchildren. All are aware of his predicament and remain supportive.

As the *Gall* Court noted, a district court is well-situated to make determinations about the "character of the defendant" and whether, given such a character, the defendant is more or less likely "to return to criminal behavior" or constitute "a danger to society." *Gall*, 128 S. Ct. at 600-01. By pleading guilty, Mr. Jimenez has clearly demonstrated responsibility for this offense and this Court should find it highly unlikely that he will engage in similar behavior in the future. Mr. Jimenez's overall background presents a positive perspective of who he is as a person and why he is worthy of the Court's leniency.

In addition to all of the reasons warranting a non-Guidelines sentence set forth in this memorandum, the advisory range calculated in the PSR should not be followed because: (1) it is far greater than necessary to promote the goals of sentencing and fails to give due consideration to all of the factors set forth in 18 U.S.C. § 3553(a); and (2) it fails to take into account fully Mr.

Jimenez's life circumstances and happenings, as discussed herein.

### 1. The Nature and Circumstances of the Offense

Several points support a non-Guidelines sentence. First, Mr. Jimenez was admittedly *not* a member of the violent street gang—the Shooting Boys—with which he dealt. Generally, he was nearly twice as old as many of that gang's members and did not partake in their violent acts of theft, robbery and stabbings. Nor is there any historical evidence of violence in his background or criminal history. As indicated by character letters submitted on his behalf by friends, neighbors and family, quite the opposite is true. The defendant is consistently described as gentle, polite and compassionate to people and animals alike. For this reason, a lengthy sentence above the statutory mandatory minimum is not needed to deter Mr. Jimenez from further unlawful conduct. With respect to any need for a sentence to afford adequate deterrence to criminal conduct, Mr. Jimenez has expressed to both U.S. Probation and family members who has visited him while detained, that he understands he's no longer a young man and simply desires to accept he consequences of his unlawful actions and return as quickly as possible to his wife and family.

### 2. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

**18 U.S.C. Section 3553(a)(2)(A)**

18 U.S.C. § 3553(a)(2)(A) demands that the penalty "provide just punishment for the offense" that simultaneously "afford[s] adequate deterrence to criminal conduct" and protects the public from further crimes of the defendant, as required by 18 U.S.C. § 3553(a)(2)(B).

Mr. Jimenez is a first federal offender with a Criminal History of I. It would not offend the spirit of 18 U.S.C. § 3553(a)(2)(A) to impose a non guideline sentence here—followed by 4 years' supervised release—where the statutory sentencing provisions for a conviction of the instant offense so allow.

**18 U.S.C. Section 3553(a)(2)(B) and 18 U.S.C. Section 3553(a)(2)(C)**

The second factor listed in 18 U.S.C. § 3553(a)(2) is to "afford adequate deterrence from criminal conduct." 18 U.S.C. § 3553(a)(2)(B). Here, either a statutory or non-Guidelines sentence of 5 years followed by 4 years' supervised release will provide adequate general deterrence to the criminal conduct of others. This is particularly so in light of the collateral consequences of a conviction and the accompanying reporting requirements by which Mr. Jimenez will be obligated to abide upon his release.

This factor focuses on specific deterrence when it requires the Court to consider the need "to protect the public from further crimes of the defendant." Mr. Jimenez is not a future risk to society and incarceration at the stipulated Guidelines range is not needed. See Michael Tonry, Purposes and Functions of Sentencing, 34 Crime & Just. 1, 28 (2006) (Research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects."); see also Zvi D. Gabbay, Exploring the Limits of the Restorative Justice Paradigm:

Restorative Justice and White Collar Crime, 8 Cardozo J. Conflict Resol. 421, 447 (2007) ("[C]ertainty of punishment is empirically known to be a far better deterrent than its severity."). *See also United States v. Lawrence*, 254 F. Supp. 3d 441 (E.D.N.Y. 2017)("[a] 'rational offender' will decide whether or not to commit a crime by weighing the benefit of not committing a crime with the benefit of committing the crime without being caught and the benefit of committing a crime that results in being caught and punished." Def.'s Ex. B (Report of Jeffrey Fagan. Ph.D.), at 4.)

The proposed statutory mandatory minimum sentence advocated here adequately punishes Jimenez for his crime and provides both general and specific deterrence. He has admitted guilt to the offenses openly and is regretful for his aberrational actions in their commission. There is minimal likelihood that he would repeat this impropriety again.

**18 U.S.C. Section 3553(a)(2)(D)**

A mandatory minimum sentence here offers ample time to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. Admittedly, he had excessively consumed alcohol periodically in the past, as well as used marijuana. He admitted that he abused Percocet until the time of his arrest. Mr. Jimenez would benefit from substance use treatment, both while in custody and in the community, to help him build coping mechanisms to refrain from future drug use. A lengthy guideline sentence here would not serve this purpose any better than the sentence we propose.

3. **The Kinds of Sentences Available**

**The Statutory Provisions**

The minimum term of imprisonment is 5 years, and the maximum term is 40 years. 21

13

U.S.C. § 846 and 21 U.S.C. § 841(b)(1)(B). The Court must impose a term of supervised release of at least four years. 21 U.S.C. § 841(b)(1)(B).

### 4. The Guidelines Calculation

The parties agree that Count 14, charging a Conspiracy to Distribute and Possess with the Intent to Distribute Cocaine, is governed by U.S.S.G. §2D1.1. The base offense level is 34 because the defendant is responsible for 85 kilograms of cocaine and 107 kilograms of marijuana, which results in a converted drug weight of 17,107 kilograms. U.S.S.G. §2D1.1(a)(5) and (c)(3). Because a firearm was possessed during the offense conduct, a two-level increase is added. U.S.S.G. 2D1.1(b)(1). Mr. Jimenez timely accepted his responsibility for the offense, therefore the offense level is decreased by 3 levels. U.S.S.G. §3E1.1(a) and (b). Given a Criminal History category of I, his total offense level of 33.

Based upon a total offense level of 33 and a Criminal History category of I, the guideline imprisonment range is 135 months to 168 months. The guideline range for a term of supervised release is four years to five years. U.S.S.G. §5D1.2(c).

#### a. Sentencing Recommendations

The Government has not yet submitted a sentencing memorandum and its recommendation is unknown. The U.S. Probation Office recommends a variance from the guideline range of 135-168 months to 120 months. PSR, ECF No. 123, at pg. 28.

Given a review of the 18 U.S.C. § 3553(a) factors thus far discussed, this Court should seriously consider whether this individual, under the facts of this case, warrants a non-Guideline sentence lower than 135-168 or even 120 months if the Court chooses not to impose a statutory mandatory minimum sentence. Counsel urges that Mr. Jimenez does and suggests a variance

from that applicable range which would allow for a sentence as proposed above.

### 5. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor, requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5).

This factor is not relevant to Mr. Jimenez's sentencing in any great degree.

### 6. The Need to Avoid Unwarranted Sentence Disparities [Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct]

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).  Indeed, § 3553(a)(6) "requires a sentencing court to consider nationwide sentence disparities …." *United States v. Ghailani*, 733 F.3d 29, 55 (2d Cir. 2012) (quoting *United States v. Frias*, 521 F.3d 229, 236 (2d Cir. 2008)).

For the reasons stated in this Memorandum, and considering the other § 3553(a) factors, counsel's proposed sentencing recommendation of a non-Guideline sentence below 135-168 months would avoid unwarranted sentence disparities between Mr. Jimenez and other offenders convicted of similar crimes, with similar backgrounds.

Mr. Jimenez's commission of the instant offense is unquestionably serious, but does not rise to the level of egregious conduct committed by members of the violent street gang with which he was associated, but *not* a member of.  A sentence lower than 135-168 months imprisonment, specifically one which imposes a statutory mandatory minimum sentence of 5 years imprisonment followed by 4 years' supervised release, promotes the salutary goal of providing uniformity in sentencing.  The Sentencing Guidelines are designed in significant part

to bring about nationwide uniformity in sentencing and to avoid unwarranted sentencing disparities. *See, Rita v. United States*, 551 U.S. 338, 127 S. Ct. 2456, 2463-64, 168 L. Ed. 2d 203 (2007); *United States v. Savin*, 349 F.3d 27, 34 (2d Cir. 2003) (noting that "a policy underlying the Guidelines is the promotion of 'reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders.'" (quoting U.S.S.G. ch. 1, pt. A, § 3 (1995)).

The proposed sentencing recommendation made here on Mr. Jimenez's behalf is the more appropriate sentence based on his history, characteristics, and the facts of the instant matter. Given his particular personal characteristics, the fragile health of his wife and physical hardship she will suffer in the absence of his support, a non-Guideline sentence would be sufficient, but not more than necessary, to meet the goals of sentencing.

### 7.     The Need to Provide Restitution

The seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). This factor remains has no bearing on the facts here.

### **CONCLUSION**

18. U.S.C. § 3553(a) requires courts to impose a sentence "sufficient, but not greater than necessary" to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public from further crimes of the defendant and to provide the defendant with needed educational or vocational training. The sentence we propose will satisfy all of these reasons for punishing this defendant. As discussed *supra*, all of the sentencing objectives can be attained by imposing a significant statutory

mandatory minimum sentence followed by 4 years' supervised release, which varies below the applicable Guidelines sentence.

Respectfully, the proposed recommended sentence is appropriate and comports with the dictates of § 3553. It is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

**Dated:** New York, NY
February 6, 2023

Respectfully submitted,

*/s/      Conor McNamara*
CONOR McNAMARA, ESQ.
LAW OFFICES OF ROBERT TSIGLER
*Attorneys for Defendant*
Phone: (718) 878-3781
Direct: (718) 701-4114
Fax:    (212) 748-1606
cm@tsiglerlaw.com

cc:   AUSA Dominic Gentile (by ECF)
      Counsel of Record (by ECF)
      U.S. Probation Officer Specialist Tandice Farrence
      (by email, Tandis_Farrence@nysp.uscourts.gov)